# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

HILDA L. SOLIS, Secretary of Labor,    )
United States Department of Labor,    )
     )
    Plaintiff,    )
     )    Civil Action File
    v.    )    No. 2:11-CV-41
     )
GATE GUARD SERVICES, LP DBA    )
GATE GUARD SERVICES,    )
BERT STEINDORF and    )
SIDNEY L. SMITH,    )

    Defendants.

## DEFENDANTS' MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, MOTION TO TRANSFER

Defendants Gate Guard Services, L.P., ("GGS") Bert Steindorf (Mr. Steindorf) and Sidney L. Smith (Mr. Smith) (collectively, "Defendants"), hereby file their Motion to Dismiss or, in the Alternative, Motion to Transfer ("Motion to Dismiss or Transfer") The United States Department of Labor's ("DOL" ) Complaint showing the Court as follows:

## I.    INTRODUCTION

This action should be transferred, if not outright dismissed, because a nearly identical action arising from the exact same facts is already pending in the Southern District of Texas before the Honorable John Rainey in the Victoria Division. Over <u>three months ago</u>, GGS was forced to file a lawsuit against the DOL after it erroneously concluded that GGS owed over six million dollars in back pay to its independent contractors based upon alleged misclassification and overtime violations of the Fair Labor Standards Act ("FLSA") (hereinafter, "the Victoria Action"). Pursuant to the "first-to-file" rule, this action should either be dismissed or transferred and consolidated with the Victoria action because the claims are "substantially related", there is a

likelihood of conflict if the two cases proceeded simultaneously, and the Victoria Division is the most convenient forum. According to the Fifth Circuit, it is an abuse of discretion not to at least transfer a case under these circumstances. This action should be transferred for the additional reason that venue is proper and most convenient in the Victoria Division where GGS conducts a substantial amount of its business and where a significant number of witnesses reside. Dismissal is also proper based on Rule 12(b)(3) and (5).

## II.    BACKGROUND FACTS AND PROCEDURAL HISTORY

### A.    Gate Guard Services, L.P.'s Operations

GGS, founded in 2003, is a Texas limited partnership which provides services to oil field operators by contracting with gate attendants (the "Contractors") who perform the job of logging in vehicles entering and departing oil field operation sites. GGS operates throughout Texas, with the majority of its operation being in South Texas. (Declaration of Bert Steindorf ["Steindorf Dec."] (attached hereto as Exhibit A) ¶¶ 5, 7.) GGS currently has approximately 140 of its 180 Contractors assigned to oil field operations in South Texas. (*Id.* ¶ 7.)[1] A substantial number of the Contractors (e.g., at least 85) are located in counties in or around Victoria, Texas, including Dewitt, Lavaca, Goliad and Refugio counties. (*Id.*) Only three to four of the 140 Contractors are assigned to oil field operations falling within the Corpus Christi Division of the Southern District of Texas. (*Id.*)

Bert Steindorf is the founder and sole limited partner of GGS. (*Id.* ¶ 2.) While Mr. Steindorf maintains a residence in Port Aransas (Nueces County), he primarily resides in Houston, Texas (Harris County) and Kemah, Texas (Galveston County) where he lives approximately eight months out of the year. (*Id.* ¶ 3.)

---

[1] GGS has a smaller number of Contractors located in North and East Texas. (Steindorf Dec. ¶ 8.)

Mr. Steindorf hired Sidney Smith in 2008 to serve as GGS's Manager of Security and Safety. (Declaration of Sidney L. Smith ["Smith Dec."] (attached hereto as Exhibit B) ¶ 2.) Mr. Smith oversees the selection and processing of independent contractors who act as gate attendants for GGS, including conducting background checks.[2] (*Id.* ¶ 3.) Mr. Smith is not an owner, partner, or officer of GGS. (*Id.* ¶ 4.) Mr. Smith does not manage, supervise or direct the business affairs and operations of GGS, does not control the finances of GGS or selection of GGS's management, and is not responsible for solving any operational problems which may arise. (*Id.* ¶¶ 5-6.) Mr. Smith does not control or direct the payment of wages to GGS's employees or payments made to any of GGS's independent contractors. (*Id.* ¶ 7.)

GGS enters into written contracts called, "Independent Contractor Agreements" with the Contractors for the performance of services at the site of oil field operations. (*See* Complaint, *Gate Guard Services, L.P. v. Hilda L. Solis, Secretary of Labor, United States Department of Labor*, Civil Action File No. 6:10-cv-91 [Dkt. #1] (attached hereto as Exhibit C) ¶¶ 9, 13.) Specifically, the Contractors log vehicles that enter and depart an oil field during the drilling and production phases. (*Id.*) The Contractors are responsible for recording the name of the driver, company, license tag number, and date and time that each vehicle enters or departs the oil field (the "gate attendant services"). (*Id.* ¶ 10.) This information is recorded onto a document called a "Traffic Log." This information is recorded so that the identity of persons present at an oil field can be ascertained in the event of an emergency. (*Id.* ¶¶ 10-11.) For example, the site supervisor of an oil field operation may review the Traffic Log to determine whether all persons have been accounted for or if search and rescue teams should be engaged to locate missing individuals. (*Id.* ¶ 11.)

---

[2] Although the work performed by the Contractors does not require a non-commissioned security officer license from the Texas Department of Public Safety, GGS's Contractors obtain these licenses for marketing purposes.

The Contractors use their own tools, equipment and supplies when performing gate attendant services, including their own recreational vehicle ("RV") which is parked at the entrance of the oil field for the duration of the assignment. (*Id.* ¶ 14.) The Contractors reside and work from the RV during the term of their assignment.[3] (*Id.*) GGS does not monitor or control the manner or method in which the Contractors perform the gate attendant services. (*Id.* ¶ 17.) In fact, the only contact a Contractor has with GGS during the course of an assignment is when GGS personnel service the septic tank or generator approximately every week or every other week. (*Id.*) When not logging vehicles in and out during an assignment, the Contractors engage in personal activities such as reading, using the Internet, talking on the telephone, watching television, completing household chores, or other pursuits or hobbies. (*Id.* ¶¶ 21-22.) The Contractors are permitted to hire other individuals to log vehicles; and many Contractors do, in fact, hire others to assist them. (*Id.* ¶ 16.) The Contractors, not GGS, pay these individuals for the work they perform. (*Id.*)

### B.    The U.S. Department of Labor's Investigation and Findings

In or around July 2010, the DOL's Wage and Hour investigator, David Rapstine, began an investigation into the independent contractor classification of GGS's Contractors. (*See* Ex. C ¶ 26.) Approximately two months later, Rapstine issued his findings. (*Id.* ¶ 27.) Specifically, the DOL found GGS to be in violation of the Fair Labor Standards Act ("FLSA") alleging that the Contractors were employees. (*Id.*) Not only did the DOL require GGS to classify the Contractors as employees rather than independent contractors, it also mandated that GGS compensate the Contractors at the federal minimum wage rate for 24 hours for each day they are

---

[3] GGS provides only a generator and septic tank for the Contractors' use during an assignment. (*Id.* ¶ 15.)

assigned to an oil field operation. (*Id.*) The DOL advised GGS to pay a whopping $6,192,752 in back wages, including unpaid overtime. (*Id.*)

On November 10, 2010 and again on November 19, 2010, the DOL's District Director, Eden Ramirez, confirmed to GGS's representatives that the DOL found GGS to be in violation of the FLSA and that GGS must pay back wages based on alleged unpaid overtime which was calculated by Mr. Rapstine to be over six million dollars. (*Id.* ¶¶ 27-30.) GGS's representatives met with Ramirez, Michael Speer, Targeted Enforcement Coordinator, and an attorney from the DOL's Office of Solicitor, on November 19, 2010 in order to discuss a potential resolution, but the DOL remained steadfast in its insistence that GGS immediately re-classify the Contractors as employees and pay over six million dollars in back wages and unpaid overtime. (*Id.* ¶ 30-31.)

## C.    The Litigation Initiated by Gate Guard Services, L.P. in the Victoria Division

GGS vehemently disputes the DOL's determination that GGS is in violation of the FLSA, including: (1) its flawed classification of the Contractors as employees; (2) its improper calculation totaling over six million dollars in back wages; and (3) its allegation that GGS has not complied with recordkeeping requirements. Given the DOL's unfounded actions, GGS was forced to file a lawsuit against the DOL in order to obtain a ruling on these issues. On November 19, 2010, GGS filed a lawsuit against the DOL styled: *Gate Guard Services, L.P. v. Hilda L. Solis, Secretary of Labor, United States Department of Labor*, Civil Action File No. 6:10-cv-91, United States District Court for the Southern District of Texas, Victoria Division. (*See* Ex. C). Service was properly effectuated on the appropriate government officials pursuant to Rule 4 on February 17, 2011 and February 22, 2011. The parties Joint Discovery/Case Management Plan will be filed on February 28, 2011, and the Initial Pretrial and Scheduling Conference is set for

March 7, 2011.  (*See* Order for Conference and Disclosure of Interested Parties, attached hereto as Exhibit D.)

### D.   The Second Filed Action by the U.S. Department of Labor in the Corpus Christi Division

Inexplicably, almost three months after GGS filed the Victoria Action, on February 16, 2011, the DOL initiated an identical action - this lawsuit - against Defendants (the "Corpus Christi Action").  [Dkt. # 1.]  In the Corpus Christi Action, the DOL alleges the exact same claims that are the basis of the Victoria Action including:  (1) that Defendants owe back wages which includes unpaid overtime to the Contractors and its service technicians, and (2) that Defendants have violated the record-keeping requirements of the FLSA.  [Dkt. # 1.][4] (Hereinafter, the Corpus Christi Action and the Victoria Action shall be referred to collectively as the "Actions.")  Even though the DOL is fully aware of the Victoria Action and the substantial overlap of the issues raised in the Victoria Action, the DOL has not yet apprised this Court of the pending related litigation in violation of Local Rule 5.2.

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   The First-to-File Rule Requires Dismissal or Transfer of the Corpus Christi Action to the Victoria Division

The Fifth Circuit and Texas district courts have adopted the "first-to-file" rule which provides that "'when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap.'" *Firstliner Indus., Inc. v. Ground and Pipe Technologies, L.L.C.*, No. Civ. A. G-05-587, 2005 WL 2861002, at *1 (S.D. Tex. Oct. 31, 2005)) (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir.1999)); *see KCCR, Inc. v. Brunner,* Civil Action No. H-10-cv-01263,

---

[4] The DOL has not yet served Defendants with the Summons and Complaint in the Corpus Christi Action.

2010 WL 4236868, at *5 (S.D. Tex. Oct. 21, 2010) (dismissing second-filed action); *Twin City Ins. Co. v. Key Energy Serv., Inc.*, Civil Action No. H-09-352, 2009 WL 1544255, at *3 (S.D. Tex. June 2, 1999) (dismissing second-filed action and transferring to first-filed court). While a court has the discretion to dismiss or to transfer the second-filed action, the Fifth Circuit has specifically recognized that refusing to do either is an abuse of discretion. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 199) (district court's denial of motion to transfer case to different judge in same district, before whom previously filed, related case was pending was an abuse of discretion).

Premised on "'principles of comity and sound judicial administration,'" the first-to-file rule requires that "'federal district courts – courts of coordinate jurisdiction and equal rank -  [ ] exercise care to avoid interference with each other's affairs.'" *Twin City Ins. Co.., Inc*., 2009 WL 1544255, at *3 (S.D. Tex. June 2, 1999) (quoting *West Gulf Maritime Ass'n v. ILA Deep Sea Local* 24, 751 F.2d 721, 728 (5th Cir. 1985)).  The rule applies where, as here, the related cases are pending before different judges in different divisions of the same district and also where the cases are pending in two different districts.  *See Cadle Co*., 174 F.3d at 606.  When applying the first-to-file rule, therefore, the second-filed court should "dismiss or transfer the action over which it is presiding in deference to the first-filed court." *Twin City Ins. Co., Inc*., 2009 WL 1544255, at *3 (dismissing and transferring subsequently filed action); *see also KCCR, Inc. v. Brunner*, Civil Action No. H-10-cv-01263, 2010 WL 4236868, at *5 (S.D. Tex. Oct. 21, 2010) (dismissing second-filed action).

In fact, once it is shown that the two actions might substantially overlap, the second-filed court must dismiss or transfer the case to the court where the first-filed action is pending so that

the first-filed court can make the substantive determinations about the fate of the actions. This Court has explained that that the first-to-file rule:

> vests in the court in which the *first* of the two related actions was filed the responsibility of 'determin[ing] whether subsequently filed cases involving substantially similar issues should proceed.' Therefore, the second-filed court should usually stay, dismiss, or transfer the action over which it is presiding in deference to the first-filed court. This enables the court in which the first related action was filed to 'decide whether the second suit filed must be dismissed, stayed or transferred and consolidated.'

*Twin City Ins. Co.*, 2009 WL 1544255, at *4 (*quoting Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir.1997)) (emphasis added).

Federal courts have recognized that the rationale behind the first-to-file rule includes avoiding the "waste o[r] duplication" of judicial resources, avoiding "rulings which may trench upon the authority of sister courts," and avoiding "piecemeal resolution of issues that call for a uniform result." *Save Power Ltd.*, 121 F.3d at 950. Because of these important policies, the first-to-file rule "should be followed 'in the absence of ***compelling circumstances***'" to the contrary. *Twin City Ins. Co.*, 2009 WL 1544255, at *4 (emphasis added) (quoting *Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)). While the first-to-file rule may appear somewhat simplistic, courts have emphasized that this "simplicity furthers comity between the courts" and, as such, the rule "should not be casually ignored." *Twin City Ins. Co.*, 2009 WL 1544255, at *4 (citing *Eastman Med. Prods., Inc. v. E.R. Squib & Sons, Inc.*, 199 F. Supp. 2d 590, 595 (N.D. Tex. 2002)).

Accordingly, this action, must, at a minimum, be transferred to the Victoria Division for the following reasons: (1) the lawsuits are substantially related; (2) maintaining two parallel lawsuits in the same district before two different judges would be conflicting, duplicative and wasteful; and (3) there are no compelling circumstances to the contrary.

1. <u>The Victoria and Corpus Christi Lawsuits are "Substantially Related"</u>

The "crucial" prerequisite to applying the first-to-file rule is the court's conclusion that the subject matter or core issues of the two cases "substantial[ly] overlap." *See Save Power Ltd., 121 F.3d at 950-51.* To satisfy this requirement, however, the "core issues" of the two parallel cases need not be "identical." *Amberwave Sys. Corp., 2005 WL 2861476, at *1.* In determining whether two cases are "substantially related," the second-filed court should consider:

- The extent of the overlap;

- The likelihood of conflict should the second case proceed; and

- The comparative advantage and interest of each forum in resolving the dispute.

*Firstliner Indus., 2005 WL 2861002, at *1* (citing *Save Power, Ltd., 121 F.3d at 950-51*).

In *Save Power Ltd.*, for example, the Fifth Circuit analyzed these factors before concluding that the district court had abused its discretion in refusing to defer to the division judge handling a related case that had been filed first. Both the original lawsuit and the subsequently filed action centered on the interpretation of a provision in the same subordination agreement. *Save Power Ltd., 121 F.3d at 948-49.* One of the parties from the original lawsuit, while applications for temporary restraining orders and preliminary injunctions were pending in the original court, filed a separate declaratory judgment action in the same division. That case was randomly assigned to a different judge within that division. *Id.* On the defendant's motion to transfer, the district judge in the subsequent court refused to transfer the declaratory judgment action back to the judge in the original court, and the two judges eventually reached contrary results on the same issue. Significantly, the Fifth Circuit held that the refusal to defer to the judge in the original action was an abuse of discretion. *Id. at 949-50.*

Here, even a cursory review of the two complaints at issue reveals the substantial overlap, if not identical overlap, between the Victoria Action and the Corpus Christi Action. Both lawsuits arise out of the same transaction or occurrence: the nature of the Contractors' work for GGS for approximately the past two to three years. Moreover, the two Actions require precisely the same legal issues: whether GGS's classification of the Contractors as independent contractors rather than employees is in violation of the FLSA and the amount of overtime compensation, if any, GGS owes to the Contractors. *Compare* Victoria Action Complaint at 1 ("GGS brings this action [seeking] an Order providing that GGS is not subject to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* with regard to its contractors . . . .") *and* Corpus Christi Action Complaint at 1 (the DOL "brings this action to enjoin [Defendants] from violating the provisions . . . of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201, *et seq.* . . [regarding] the employees named . . . ."). Accordingly, the remedies the DOL seeks – liability for allegedly unpaid wages and an injunction forcing the Defendants to comply with the FLSA – will unquestionably be addressed and resolved by the Victoria Court when it declares whether the Contractors are independent contractors under the FLSA and whether GGS is liable for any back pay under the FLSA.

Indeed, courts have found "substantial similarity" in cases that share far fewer fact and issue similarities than the Actions share. In *Rosas v. Raytheon Aircraft Co., Civil Action No. 5:06-cv-184, 2007 WL 1520992, at *2 (S.D. Tex. May 21, 2007)*, for example, several aircraft passengers brought a personal injury suit alleging that Raytheon, an aircraft manufacturer, was liable on claims of negligence and strict liability. They alleged that a particular model of aircraft, the "RB-87" wrongfully disbursed toxic fumes into the pressurized cabin and pilot areas. *Id.* at *1. In a suit previously filed in Kansas District Court, Raytheon sought a declaration that its

design of an aircraft baggage door was not faulty and that it had not breached any warranties in its sales contract with Rio Grande,[5] another company that had purchased RB-87's. The *Rosas* plaintiffs argued that the cases did not "substantially overlap" for purposes of the first-to-file rule because the suits involved both different parties and different theories of recovery. *Id*. at *2. Maintaining a "faithful focus" on the first-to-file rule's important purpose of preventing conflict between coequal district courts, the Court nonetheless concluded that the two cases "substantially overlapped." *Id*.

In this case, the degree of overlap between the Actions is even stronger and any differences are far less prominent than those in *Rosas*, as the underlying facts and legal claims are virtually identical. The only remotely discernable difference between the Actions is that the Corpus Christi Action has named Mr. Steindorf and Mr. Smith as Defendants,[6] in addition to GGS, while GGS alone is the plaintiff in the Victoria Action. This is an immaterial distinction for purposes of the "substantial similarity" analysis. Courts have repeatedly recognized that a subsequent action that does not share "a complete identity of the parties can still substantially overlap on the substantive issues of the first-filed action." *Amberwave*, 2005 WL 2861476 at *1; *see also Rosas*, 2007 WL 1520992 at *2 (specifically rejecting the plaintiffs' contention that the fact that they were not named parties to the originally filed Kansas suit precluded a finding of "substantial similarity").

---

[5] The President and prime stockholder of Rio Grande also served as one of the personal injury plaintiffs in the subsequently filed action.

[6] An FLSA plaintiff may assert claims only as to "employers" under 29 U.S.C. § 203(d). Mr. Smith does not manage, supervise, or direct the business affairs of GGS, and has no control over the payment of wages to the Contractors. Smith Dec. ¶¶ 5-7. Because, an individual must "independently exercise" a "sufficient level of control [with a] nexus to the protected rights at issue," including compensation regulated by the FLSA to constitute an "employer," Mr. Smith cannot, in his individual capacity, be held liable for the provisions of the FLSA. *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir.1984).

2. The Dueling Victoria and Corpus Christi Actions Present Both the Likelihood of Conflict and a Waste of Judicial Resources

Given the strong identity of issues discussed above, the likelihood of conflicting rulings in the two actions is high – *i.e.* one court could conceivably determine that GGS contractors are encompassed by the FLSA, while the other could determine that they are not. The Fifth Circuit has specifically recognized that the potential for such irreconcilable conflict should be avoided. *See Save Power, Ltd*, 121 F. 3d at 951 (refusing to address second filed suit because of the potential for inconsistent creditor priority determinations by the two judges). In short, there is substantial likelihood that the rulings issued by this Court would "trench upon the authority" of its sister court in Victoria. *See id.* at 950. Therefore, the Corpus Christi Action should be dismissed or transferred to avoid piecemeal resolution of the FLSA issues and ensure a uniform result. *Id.* Doing so would allow the virtually identical issues to be tried together, thus promoting judicial economy and avoiding the undeniable inefficiency and wasted resources that would result from allowing the two actions to proceed at once. *Id.*

3. No "Compelling Circumstances" Exist that Would Obviate This Court's Application of the First-to-File Rule

No conceivable, let alone "compelling," reason exists that would preclude applying the first-to-file rule in this case. The required showing for "compelling circumstances" is high and reinforces federal courts' strong adherence to the first-to-file rule. *See, e.g.*, *Twin City Ins. Co.*, 2009 WL 1544255, at *3 (rejecting the subsequent plaintiff's contention that eight (8) hour delay in filing caused by technical difficulties with court's electronic filing system constituted "compelling circumstances"); *Doubletree Partners, L.P.*, No. 3:08-CV-1547-O, 2008 WL 5119599, *3 (N.D. Tex. Dec. 3, 2008) (unsupported allegations of bad faith against first-filing party did not present a compelling exception to the first-to-file rule); *Eastman Med. Prods., Inc. v. E.R. Squibb & Sons, Inc.*, 199 F. Supp. 2d 590, 595 (N.D. Tex. 2002) (rejecting the argument

that the first-to-file rule should not be adhered to because the two parallel federal court actions were filed "almost simultaneously").

To the contrary, there are compelling reasons to either dismiss this action or transfer it to the Victoria Division. As discussed in detail in Section III.C below, the Victoria Division has a strong – and, in fact, superior – connection to the people, facts, and events underlying this action. For example, a significant amount of GGS's services are performed in the counties comprising the Victoria District. (Steindorf Dec. ¶ 7.) In this regard, only three or four Contractors are assigned to operations within the Corpus Christi Division, while nearly ten times that many are assigned to oil field operations in the Victoria Division. (*Id.*) Additionally, Mr. Steindorf, the owner of GGS, primarily resides in Harris and Galveston Counties (*Id.* ¶ 3), which are closer geographically to the Victoria Division than the Corpus Christi Division. Therefore, the Victoria Division has a more than sufficient local interest in resolving the dispute for purposes of applying the first-to-file analysis. *See Firstliner Indus.*, 2005 WL 2861002, at *1 (on defendant's motion to transfer, recognizing that where important witnesses are located in both districts at issue and that the action could have been brought in either, the first-to-file rule prevails, thus *requiring* transfer).

Given the substantial similarity between the Actions and because there is no "compelling" reason to refuse to apply the first-to-file rule, this Court should dismiss or transfer the Corpus Christi Action.[7]

---

[7] Another basis for dismissing this action is improper service of process pursuant to Fed. R. Civ. P. 12(b)(5). Defendants have not yet been properly served, although the DoL did send a copy to counsel for Defendants via email.

**B.**	**This Action Should Be Transferred to the Victoria Division Pursuant to the Doctrine of Forum Non Conveniens**

The Fifth Circuit has "made clear" that, as with a first-to-file transfer, "'it is the first-filed court, not the [second-filed] court that should make the [28 U.S.C.] § 1404(a) determination.'" *Twin City Ins. Co., 2009 WL 1544255, at *6* (*quoting Sutter Corp., 125 F.3d at 920*). Notwithstanding that it is the duty of first-filed court to undertake this analysis, this Court should note that an analysis under § 1404(a) factors weigh in favor of transferring this case. Section 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Whether a § 1404(a) transfer is proper is committed to the sound discretion of the trial court, which should determine a motion to transfer venue based on an "individualized case-by-case consideration of convenience and fairness." *Shoemake v. Union Pacific R.R. Co., 233 F. Supp. 2d 828, 829 (E.D. Tex. 2002)*(citing *Stewart Org., Inc. v. Recoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)*).

This statute is designed to avoid the waste of time, money and energy and "[t]o protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Houston Trial Reports, Inc. v. LRP Publications, Inc., 85 F. Supp. 2d 663, 667 (S.D. Tex. 1999)*. "In ruling on a motion to transfer venue, the court first must determine whether the plaintiff's claim could have been filed in the judicial district to which transfer is sought." *Doubletree Partners, L.P. v. Land Am. Title Co., 2008 WL 5119599, at *4*. Next, a defendant must show "good cause" for transfer, by "satisfy[ing] the statutory requirements and clearly demonstrat[ing] that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Id.* (quoting *In re Volkswagen of Am., Inc., 545 F.3d 304, 315 (5th Cir. 2008)*).

14

As an initial matter, venue is proper in the Victoria Division. There is no question that venue is proper in the Southern District of Texas, as both the Victoria Action and the Corpus Christi Action are pending in the Southern District. *See Molina v. Vilsack*, V-09-40, 2009 WL 5214098, at *2 (S.D. Tex. Dec. 23, 2009) (finding that venue was proper in the Southern District of Texas because "Defendant only seeks to transfer to another division within this district.") Thus, the threshold determination of whether this action could have been brought in the Victoria Division is easily established. As set forth below, there are numerous other reasons as to why the Victoria Division is more favorable than the Corpus Christi Division for this case.

      1.    <u>This Action Should be Transferred to the Victoria Division in the Interest of Justice.</u>

Most importantly, the "interest of justice" will be served by transferring this action to the Victoria Division because this lawsuit substantially overlaps with the Victoria Action, a prior pending suit. *See* 28 U.S.C. § 1404(a). "Transfer is particularly appropriate where, as here, a related case involving the same or similar issues is pending in another court." *Doubletree Partners, L.P.*, 2008 WL 5119599, at *5. The Fifth Circuit has held that a district court should consider whether related litigation is pending in another district in granting a motion to transfer. *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528-29 (5th Cir. 1988). As explained by the United States Supreme Court:

> To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent. Moreover, such a situation is conductive to a race of diligence among litigants for a trial in the District Court each prefers.

*Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 80 S. Ct. 1470, 4 L.Ed.2d 1540 (1960). *See also Data Treasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 594 (N.D. Tex. 2003) (holding that the interest of justice heavily favored transferring case to district where prior

related litigation was currently pending); *Poseidon Oil Pipeline Co. v. Noble Drilling (U.S.) Inc., No. 06-5723, 2007 WL 1259219, at \*1-2 (E.D. La. Apr. 26, 2007)* (transferring case to district of first-filed action). Accordingly, because the Victoria Action is the first-filed action, the interest of justice, a paramount consideration in deciding a request to transfer, will best be served by transferring the Corpus Christi Action to the Victoria Division.

    2.    <u>The Convenience of the Parties and Witnesses Favor Transfer to the Victoria Division.</u>

In addition to serving the interest of justice, this action should be transferred to the Victoria Division for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a). In analyzing the convenience of the parties and witnesses in connection with a motion to transfer pursuant to 28 U.S.C. § 1404(a), courts in the Fifth Circuit must consider the following private and public factors.

    a.    <u>Private Factors</u>

Undoubtedly, the availability and convenience of the non-party witnesses weigh in favor of transfer to the Victoria Division. This factor, which is "probably the most important" in a transfer of venue analysis, considers the convenience of non-party witnesses rather than the convenience of witnesses who are parties to the action. *Fletcher v. Southern Pacific Transp. Co., 648 F. Supp. 1400, 1401 (E.D. Tex. 1986)*; *Devon Energy Production Co., L.P., 2007 WL 1341451, at \*6*.

Here, virtually all of the non-party witnesses are located outside of the Corpus Christi Division. (Steindorf Dec. ¶¶ 7- 8.)[8] The Contractors are the key witnesses in this case, as they will testify about their classification as independent contractors and their hours and conditions of

---

[8] Smith and Steindorf are party witnesses and thus their location is afforded little weight in this analysis. *Devon Energy Production Co., L.P., 2007 WL 1341451 at \*6*. In any event, Smith is not a proper party to this action because he is not individually liable under the FLSA. Furthermore, Steindorf's primary residence is outside of the Corpus Chrisiti Division. (Steindorf Dec. ¶ 3.)

work. The Contractors (at least 85) are located largely within the Victoria Division, or are otherwise spread throughout jurisdictions outside Southern District of Texas. (*Id.*) Significantly, only three to four of the Contractors are located in the vicinity encompassed by the Corpus Christi Division. (*Id.* ¶ 7.) Therefore, the availability and convenience to the non-party witnesses weighs in favor of transferring this action to the Victoria Division. *Fletcher*, 648 F. Supp. at 1401 (transferring case where greater number of witnesses resided or were subject to process in another division).

Second, the cost of obtaining witnesses and trial expenses weighs in favor of the Victoria Division. As set forth above, the non-party witnesses are located outside of the Corpus Christi Division. Thus, the cost of obtaining these witnesses for trial will be less if this action is transferred to the Victoria Division, where a large number of the Contractors are located. *See Molina*, 2009 WL 5214098, at *3.

Third, the factor respecting the relative ease of access to sources of proof weighs in favor of transfer to the Victoria Division because the Contractors are, in large part, located within the Victoria Division. (Steindorf Dec. ¶ 7.) Moreover, the Traffic Logs, which often remain in the possession of the Contractors and are an important source of proof in the parties' dispute, are more accessible in the Victoria District. (*Id.* ¶ 10.) Accordingly, this factor weighs in favor of transfer. *See Fletcher*, 648 F. Supp. at 1401 (transferring case to judicial district where greater amount of proof was located); *Molina*, 2009 WL 5214098, at *3 (same).

The fourth private factor courts typically consider is the availability of compulsory process. *Molina*, 2009 WL 5214098, at *3. This factor is neutral because Rule 45(c)(3)(A)(ii) allows courts within both the Victoria Division and the Corpus Christi Division to compel the attendance of Texas residents at trial.

Fifth, when analyzing the factor regarding the place of the alleged wrong, this Court should consider that the crux of the DOL's claims concern GGS's classification of its Contractors as independent contractors and its payments to the Contractors. [Dkt. # 1.] Thus, because a substantial number of the Contractors are located within and paid within the Victoria Division, this factor favors transfer to that division. *See Molina*, 2009 WL 5214098, at *3; *Guerrero v. Habla Communications*, No. Civ. A. H-05-3620, 2006 WL 696646, at *2 (S.D. Tex. Mar. 16, 2006) (concluding that the primary situs of material events affecting the plaintiffs in FLSA action was the actual workplace where "their working hours were performed" rather than where the relevant personnel and payroll decisions were made).

The sixth private factor considered in a forum non conveniens analysis, the possibility of delay and prejudice, weighs in favor of transfer to the Victoria Division. That Division is where related litigation was first filed, is currently pending, and where the parties are scheduled to attend an initial pretrial and scheduling conference on March 7, 2011. (*See* Ex. D.) While this Court has also set a date for the initial pretrial and scheduling conference which will occur approximately one month after the conference scheduled in the Victoria Division, the first-filed Victoria Action will likely proceed more quickly, particularly given that Defendants have not yet been served in the Corpus Christi Action.

Seventh, courts take into consideration the plaintiff's choice of forum. While the "plaintiff's choice of forum is a factor to be considered," it "is neither conclusive nor determinative." *Molina*, 2009 WL 5214098, at *2 (quoting *Devon Energy Production Co., L.P. v. GlobalSantaFe South America*, No. H-06-2992, 2007 WL 1341451, at *6 (S.D. Tex. May 4, 2007). Where, as here, the forum chosen by the DOL has "little or no factual connection to the case," courts give this factor less weight. *Id.* The facts giving rise to the DOL's Complaint

largely take place outside of the Corpus Christi Division. *See* Guerrero, 2006 WL 696646, at *2. Specifically, a large number of the Contractors are located in the Victoria Division or within another district altogether. (Steindorf Dec. ¶¶ 7-8.) An extremely small number of the Contractors are located in the Corpus Christi Division (*i.e.*, only 3 or 4 out of 140 Contractors). (*Id*. ¶ 7.) Accordingly, the DOL's choice of forum should be afforded little weight in deciding whether to transfer this action to the Victoria Division. Molina, 2009 WL 5214098, at *2 (recognizing that the plaintiff's choice of forum is not "determinative" when granting defendant's motion to transfer).

        b.      Public Factors

On a forum non conveniens analysis, the first public factor courts consider is the potential administrative difficulties that will flow from court congestion. Here, the maintenance of two nearly identical lawsuits in two different divisions before two different judges within the same district clearly creates administrative difficulties and court congestion. The transfer of the Corpus Christi Action to the Victoria Division will undoubtedly ease court congestion by consolidating these nearly identical lawsuits. *Devon Energy Production Co., L.P.*, 2007 WL 1341451, at *8 (holding that the administrative difficulties of maintaining two suits arising from the same occurrence weighed in favor of transfer to the district where first-filed action was pending).

    Second, a court should consider the local interest a jurisdiction has in resolving the dispute. "Courts favor the venue in which the events giving rise to the litigation occurred." *See Molina*, 2009 WL 5214098, at *4. Here, the key events giving rise to the parties' dispute – *i.e.*, the work performed by the Contractors and the ensuing payments made to them – occurred outside of the Corpus Christi Division. Many of the payments were made within the Victoria Division, thus favoring transfer to that division. *See Guerrero*, 2006 WL 696646, at *2

Third, courts consider the respective courts' familiarity with the governing law and the interest in avoiding conflicts of law. *Molina*, 2009 WL 5214098, at *5. Both the Victoria Action and the Corpus Christi Action concern the FLSA and its application to the Contractors. Thus, this factor is neutral.

In sum, the public and private factors typically addressed by Courts in a forum non conveniens analysis, overall, weigh in favor of a transfer this action to the Victoria Division. Furthermore, the interest of justice is clearly served by transferring this action to the Victoria Division, where the first-filed case is currently pending. Accordingly, even if the Court declines to follow the first-to-file rule, as supported by established Fifth Circuit precedent, this Court may transfer this action on an entirely independent basis: 28 U.S.C. § 1404(a).

> 3. This Case Should Be Dismissed Based on Improper Venue Pursuant to Fed. R. Civ. P. 12(b)(3)

Federal Rule 12 (b)(3) provides that this Court may dismiss this action based on improper venue. The Victoria Action, which has been pending for three months, involves the same issues as in this case. And, as discussed above, filing a similar law suit in any venue beyond the Victoria Division presents the potential for conflict. Accordingly, venue is improper in this Court and this Court should dismiss it pursuant to Fed. R. Civ. P. 12(b)(3).

## IV. CONCLUSION

GGS has demonstrated that this case is precisely the kind of case for which the first-to-file rule was devised. For all of the foregoing reasons, Defendants respectfully request that the Court dismiss this action pursuant to the "first-to-file" rule or, in the alternative, transfer this action to the Victoria Division so that it can be consolidated with the pending Victoria Action.

[SIGNATURE ON FOLLOWING PAGE]

This 25th day of February, 2011.

**CHAMBERLAIN HRDLICKA**
**WHITE WILLIAMS & MARTIN**

By:  /s/ Annette A. Idalski
       Annette A. Idalski
       Texas Bar No. 00793235
       Federal I.D. 1130754
       191 Peachtree Street, N.E.
       Thirty-Fourth Floor
       Atlanta, GA  30303-1747
       Telephone:  (404) 658-5386
       Facsimile:   (404) 659-1852

*Attorney for Plaintiff Gate Guard Services, L.P.*

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that I have this date served the Plaintiff, as listed below, with a copy of DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER via United States mail to:

UNITED STATES DEPARTMENT OF LABOR
Colleen B. Nabhan
525 Griffin Street, Suite 501
Dallas, Texas 75202
nabhan.colleen@dol.gov

OFFICE OF UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF TEXAS
Lawrence M. Ludka
800 N Shoreline Blvd, Ste 500
Corpus Christi, TX 78401
larry.ludka@usdoj.gov

This 25th day of February, 2011.

**CHAMBERLAIN HRDLICKA
WHITE WILLIAMS & MARTIN**

By:___*/s/ Annette A. Idalski*_____
        Annette A. Idalski
        Texas Bar No. 00793235

## Rule 7.1(D) Certificate of Conference

As required by Local Rule 7.1(D), Defendants hereby avers that they have attempted to confer with Plaintiff about the issues raised herein and the parties have been unable to agree regarding the disposition of this motion.

This 25th day of February, 2011.

**CHAMBERLAIN HRDLICKA**
**WHITE WILLIAMS & MARTIN**

By:__*/s/ Annette A. Idalski*_____
      Annette A. Idalski
      Texas Bar No. 00793235