**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| GATE GUARD SERVICES, L.P.<br>and BERT STEINDORF, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action File No. 6:10-cv-91 |
| v. | ) | |
| | ) | JURY |
| HILDA L. SOLIS, SECRETARY OF LABOR, | ) | |
| UNITED STATES DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| HILDA L. SOLIS, Secretary of Labor,<br>United States Department of Labor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File No. 6:11-cv-14 |
| v. | ) | JURY |
| | ) | |
| GATE GUARD SERVICES, LP DBA | ) | |
| GATE GUARD SERVICES, | ) | |
| BERT STEINDORF and SIDNEY L. SMITH, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO COMPEL ANSWERS TO DEPOSITION QUESTIONS AND THE IMPOSITION OF SANCTIONS
## AND
## REQUEST FOR GUIDELINES ON DEPOSITION CONDUCT AND FOR MAGISTRATE SUPERVISION OF DEPOSITIONS

COME NOW, Gate Guard Services, L.P., Bert Steindorf and Sidney L. Smith (hereinafter referred to as "Movants"), and respectfully submit their Motion to Compel Answers to Deposition Questions and the Imposition of Sanctions and Request for Guidelines on

Deposition Conduct and for Magistrate Supervision of Depositions (the "Motion") pursuant to Fed. R. Civ. P. 30(c)-(d) and Fed. R. Civ. P. 37(a) as follows: [1]

## I.   **INTRODUCTION**

Consistent with the Secretary's efforts to impede the fair and orderly proceeding of this litigation to date, counsel for the Secretary's recent conduct at the deposition of lead Wage and Hour Investigator, David Rapstine, proves that deposition discovery will, regrettably, also proceed acrimoniously. Indeed, as the transcript and DVD recording of the deposition plainly show, counsel for the Secretary has improperly interpreted her role as going beyond enforcement of the Fair Labor Standards Act. In essence, counsel for the Secretary's conduct suggests that she believes she has the unilateral authority to determine the scope and conduct of discovery in a way that unfairly limits the Movants' ability to prepare and present their defenses.

At the deposition, counsel for the Secretary inappropriately interjected herself by asserting excessive objections and argument, by instructing Mr. Rapstine to refrain from responding to numerous simple inquiries, and by otherwise engaging in tactics purposely intended to disrupt the deposition process and impede the defense of this case. Moreover, counsel for the Secretary invoked the "government informant's" privilege in an unprecedented and expansive manner in an apparent attempt to block Movants from discovering any information whatsoever related to the Wage and Hour investigation which resulted in a multi-million dollar demand against GGS and Mr. Steindorf.

While counsel for GGS, who had traveled from Atlanta to Corpus Christi, repeatedly attempted to confer with counsel for the Secretary so that she could proceed with a productive

---

[1] Contrary to counsel for the Secretary's previous suggestion, the relief sought in this Motion to Compel is entirely independent of the relief sought in the Motion to Compel discovery responses filed on June 2, 2011 [Dkt. #41.] This Motion is precipitated solely by the improper and disruptive conduct of the Secretary's counsel at the June 7, 2011 deposition of David Rapstine.

deposition, counsel for the Secretary's unwavering determination to impede a fair examination of Mr. Rapstine soon became clear. Though Movants would have preferred to resolve this issue short of this Court's intervention, Movants cannot allow the Secretary's counsel to persist in her egregious tactics, which essentially stonewall Movants from taking any meaningful deposition discovery. Even a cursory review of the transcript reveals that counsel's repeated speaking objections and instructions not to answer leave the existing record almost incomprehensible. Accordingly, Movants respectfully request that this Court enter an order compelling Mr. Rapstine's answers to all questions that were met with improper objections.  Furthermore, given counsel for Secretary's demonstrated intent to disrupt and delay depositions, Movants request that this Court prescribe specific guidelines for the conduct of future depositions and/or the appointment of a Magistrate Judge or a Master to oversee those depositions. Finally, in light of counsel for the Secretary's bad faith conduct which caused this deposition and four others to be canceled, Movants respectfully request an award of sanctions against Secretary's counsel, which necessarily include the attorneys' fees and travel costs Movants incurred as a result of the aborted depositions and in preparing and filing this Motion.

## II.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Attempted June 7, 2011 Deposition of David Rapstine

One June 7, 2011 at 9:00 a.m., counsel for Movants attempted to conduct the deposition of David Rapstine, who served as the lead investigator in the Secretary's investigation of GGS. Within mere minutes of commencing the deposition, counsel for GGS encountered a barrage of objections from counsel for the Secretary.[2] [*See* Rapstine Dep., p. 9.]  During the course of a deposition lasting a **mere hour-and-a-half**, counsel for the Secretary interjected with objections

---

[2] The complete transcript of the June 7, 2011 deposition of David Rapstine ("Rapstine Dep.") is attached hereto as Exhibits A-1 and A-2.

approximately **102 times**. [*See generally* Rapstine Dep.] Nearly all of her objections were improper and excessive. For example, they included:

- Fifteen (15) "asked and answered" objections [*See, e.g.,* Rapstine Dep., p. 46, lines 6-8; p. 52, lines 6-8; p. 63, lines 18-20; p. 80, lines 22-24.];

- Twelve (12) instances of reiterating objections to questions that were simply being re-read verbatim by the court reporter [*See, e.g.,* Rapstine Dep., p. 19, line 19; p. 11, lines 8-9; p. 11, line 18 through p. 12, line 1; p. 47, lines 21-22.];

- Seven (7) objections that a merely leading question "calls for speculation" [*See, e.g.,* Rapstine Dep., p. 51, lines 7-8; p. 57, line 10; p. 60, lines12-16; p. 73, lines 21-25.];

- Six (6) objections based on "facts not in evidence" [*See, e.g.,* Rapstine Dep., p. 15, lines 3-8; p. 45, lines16-24; p. 64, lines 15-19; p. 73, lines 21-25; p. 77, lines 12-15.];

- Four (4) objections that a question "lacked foundation" [*See, e.g.,* Rapstine Dep., p. 15, lines 3-8; p. 45, lines 16-24; p. 73, lines 21-25; p. 77, lines 12-15.];

- Four (4) objections that the term "you" is ambiguous [*See, e.g.,* Rapstine Dep., p. 10, lines 19-21; p. 13, lines 7-8.]; and

- Three (3) instructions not to answer based on merely "argumentative" questions that had been "asked and answered" [Rapstine Dep., p. 62, lines 20-22; p. 63, lines 18-19; p. 64, lines 24-25.]

Moreover, at least **eighteen (18) times** throughout the deposition, counsel for the Secretary repeatedly instructed Mr. Rapstine not to answer the most basic questions about his investigation on of the purported bases of both the government informant's privilege and for reasons entirely unrelated to any recognized privilege.[3]  She also improperly coached the deponent by repeatedly raising her hand before counsel for Defendants finished asking Mr. Rapstine the question. Given all of these baseless objections, counsel for the Secretary spoke more than the deponent. She has **537 speaking lines** as compared to **merely 421 speaking lines by Mr. Rapstine,** excluding his request that questions be re-read after an extensive colloquy by

---

[3] Counsel for the Secretary even objected to certain exhibits produced during discovery as privileged. The redacted and unredacted versions of the October 5, 2010 email from Mr. Rapstine to his supervisor, Vincente Leja, the deposition are attached hereto as composite Exhibit B.

the Secretary's counsel.[4] **In total, counsel for the Secretary spoke fifty-six percent (56%) of the time, as compared to the deponent, Mr. Rapstine, who spoke merely forty-four percent (44%) of the time.**

While counsel for Movants attempted to work with counsel for the Secretary to avoid the Court's intervention [*see, e.g.,* Rapstine Dep. p. 26, line 19 through p. 17, line 8], counsel for the Secretary's repeated speaking objections and instructions not to answer essentially stonewalled Movants from obtaining the most basic discovery. [*Id*. p. 70, lines 8-24; p. 80, line 21 through p. 85, line 2.] After it became evident that proceeding with the deposition would yield more testimony from the Secretary's counsel than Mr. Rapstine, counsel for Movants were forced to conclude the deposition and seek the guidance of this Court.

### B.    The June 7, 2011 Phone Conference with the Court

At the request of Movant's counsel, the Court promptly scheduled a telephone conference on the afternoon of June 7, 2011 with the parties. Just prior to that conference, counsel for Movants delivered to the Court the only then-existing original DVD recording of the deposition. Upon doing so, counsel for Movants provided proper and professional notice to the Secretary that this DVD had been delivered, contrary to counsel for the Secretary's protestations that delivery of the DVD constituted an "ex parte" communication.[5] During the course of the telephone conference, counsel for the Secretary incorrectly suggested to this Court that the principal, if not sole, cause for dispute during Mr. Rapstine's deposition concerned her efforts to invoke the "informant's privilege."   While counsel's indiscriminate use of the informant's privilege did frustrate GGS's discovery efforts, at the same time, this privilege was invoked

---

[4]And many of Mr. Rapstine's speaking lines provide simple "yes" or "no" responses and not the discussion of substantive information.

[5] The June 7, 2011 email from Kelly Campanella to counsel for the Secretary regarding the DVD delivery is attached hereto as Exhibit C.

fourteen (14) times relative to counsel's 102 total objections. **Thus, the informant's privilege cannot explain away the 88 remaining objections or the generally confrontational approach that counsel for the Secretary used to disrupt the deposition**.

At the conclusion of the telephone conference, the Court instructed Movants to file the instant Motion specifying the discovery relief requested and, further, stated that the Secretary shall have 21 days to respond. Depositions will not resume until the Court has ruled on the instant motion.

**III.  ARGUMENT**

**A.  The Conduct Demonstrated by Counsel for the Secretary Defies Fed. R. Civ. P. 30 Requiring Supervision by the Court For Future Depositions**

Fed. R. Civ. P. 30 (c)(2) provides:

> An objection at the time of the examination . . . must be noted on the record, **but the examination still proceeds**; the testimony is taken subject to any objection. **An objection must be stated concisely in a non argumentative and non suggestive manner**. A person may instruct a deponent not to answer only when necessary to preserve a privilege . . . . (emphasis added)

As Rule 30 and the Advisory Committee's notes accompanying its 1993 amendment make clear, counsel defending a deposition must specifically avoid "lengthy objections and colloquy, often suggesting how the deponent should respond." Under Rule 30, "speaking objections," which courts have defined as "objections that are argumentative or which suggest an answer to the witness," are expressly "prohibited during depositions." *Breaux v. Halliburton Energy Servs.,* Civ. Action Nos. 04-1636 c/w 05-0896, 05-089, 2006 WL 2460748, at * 3 (E.D. La. Aug. 22, 2006) (citing *Wilson v. Sundstrand Corp.*, 2003 WL 21961359 (N.D Ill. 2003)). Instead, to maximize the productivity of the deposition in the limited seven-hour time frame provided, "counsel's statements when making objections should be **succinct and verbally**

**economical, stating the basis of the objection and nothing more**." *Id.* (citing *Damaj v. Farmers Ins. Co.*, 164 F.R.D. 559, 561 (N.D. Okla. 1995)).

As revealed by the deposition transcript and DVD provided to the Court, the Secretary's counsel clearly failed to present objections in the concise, non-argumentative and non-suggestive manner suggested by Rule 30. Moreover, counsel for the Secretary proceeded in a bad faith manner by using tactics intended to annoy, embarrass and oppress Movants' counsel during the deposition. Indeed, counsel for the Secretary impeded what otherwise should have been an appropriate and careful examination of Mr. Rapstine. The following provides an illustrative example of the disruptive conduct Ms. Nabhan displayed throughout the deposition:

> Q:   So, your calculations on Exhibit 3 were incorrect, correct?
> A:   No.
>      MS. NABHAN: Objection.
> A:   No.
> Q:   Well, they've been reduced by, approximately, 6 four million dollars, right?
> A:   Yes.
> Q:   Well, why do you say they're incorrect?  They're not incorrect.
> A:   Because they were based on the information that I had available to me at that time.
> Q:   Well, what new information did the secretary have to change their mind to reduce the total to two million as opposed to six million, if you know?
>      MS. NABHAN: I would object on the basis of the attorney-client privilege, the attorney work product doctrine privilege, the delivered process privilege.
> Q:   You can answer.
> A:   Repeat the question, please.
> Q:   Sure. The court reporter would repeat the question.
>      (QUESTION READ BACK BY REPORTER.)
>      THE WITNESS: I thought I answered that.
>      COURT REPORTER: Okay. Hold on.
>      (QUESTION READ BACK BY REPORTER.)
>      MS. NABHAN: And I'm going to reiterate my objection. It's already on the record.
> A:   Well, I think some was carved out because of the statute had run, and any other reason to adjust them, I'm not familiar with. I'm not privy to that information.

Q:      So, if Mr. Steindorf would have wrote a check, in October of 2010, for six million dollars, he essentially would have been overpaying then, wouldn't he have?

MS. NABHAN: I'm going to object that that's argumentative and it also calls for speculation, and it assumes facts not in evidence because he did not write a check for six million dollars.

Q:      You can respond.

A:      If he would have paid that amount, that was based on the calculations at that time.

Q:      But he would have overpaid because, now, the calculations, there's a four million dollar reduction, right?

MS. NABHAN: I'm going to object as argumentative and harassing and instruct you not to answer. You've already answered that question.

MS. IDALSKI: How is that argumentative and harassing when you've asked my client once to pay six million dollars, and now my client is told that he owes two million dollars, and we're asking why there's a difference; and, if he would have paid that six million dollars, he would have overpaid. That's a fair question. We're talking about millions of dollars here. We can't get an answer?

MS. NABHAN: Asked and answered, harassing, argumentative.

Q:      (By Ms. Idalski) Would you have accepted a check for six million dollars in October of 2010?

MS. NABHAN: Objection, calls for speculation, argumentative, harassing. You may answer.

A:      The check doesn't go to me. It goes to a back wage collection process after the file is -- after I submit the file up to the district office.

Q:      I understand. Would you have taken the check and submitted it to the appropriate person at the secretary?

MS. NABHAN: Objection, asked and answered, harassing and argumentative. I'm going to instruct you not to answer that question.

MS. IDALSKI: I'm simply asking if he would have taken the check and forwarded it to the proper person who he's just identified.

MS. NABHAN: He's already answered that question.

MS. IDALSKI: No, he hasn't. I still don't know if he would have taken the check or not. He said that he doesn't -- he can't keep the check for himself; he would have to send it to someone else. I'm just confirming.

Q:      (By Ms. Idalski) Is that what you said, Mr. Rapstine?

A:      That's not what I said.

Q:      Okay. What did you say? If Mr. Steindorf, in October of 2010, would have took out his checkbook and wrote a check for six million dollars and said, "I want to settle this, here you go," you would have taken the check on behalf of the secretary. You wouldn't have refused it, correct?

MS. NABHAN: Objection. That assumes facts not in evidence, because, in fact, Mr. Steindorf did not present a check for six million dollars. It's harassing and argumentative because you've already asked him these questions. Let's move on.

- 8 -

MR. PIPITONE: It's called a hypothetical, by the way.

Q:    (By Ms. Idalski) You can respond, unless your attorney is instructing you not to answer.

MS. NABHAN:  I'm instructing you not to answer that.

[Rapstine Dep., p. 60, line 1 through p. 64, line 25.]

And as if the sheer impropriety Ms. Nabhan displayed during this discourse was not enough to constitute a violation of Rule 30, the full deposition transcript will.  It reveals that she had five hundred thirty seven (537) speaking lines as compared to merely four hundred twenty one (421) speaking lines by Mr. Rapstine, excluding his requests that questions be re-read after an extensive colloquy by counsel. In essence, counsel for the Secretary spoke fifty six percent (56%) of the time, as compared to Mr. Rapstine who spoke merely forty four percent (44%) of the time.   These 537 speaking lines consist of **one hundred two (102) objections over the course of a deposition numbering merely eight six (86) substantive pages**. Of these objections, 88 were largely general in nature. For example, "asked and answered" was interjected as an objection fifteen (15) times. A question was declared to be "harassing" on twelve (12) occasions. An objection was asserted that a question was "argumentative" on eight (8) occasions. "Speculation" was utilized as an objection on seven (7) occasions. Additionally, numerous objections were improperly couched in forms generally reserved for trial such as repeated objections to "facts not in evidence" or questions purportedly "seeking a conclusion," or objections about purported "mischaracterization of the witness's testimony." Finally, in a protestation reminiscent of the infamous Clintonian musing about the potential "meaning[s] of the word 'is,'" Ms. Nabhan objected that the use of the term "you" was "ambiguous" on at least four (4) occasions.

As an additional demonstration of bad faith conduct, counsel for the Secretary either preemptively and/or inappropriately "coached" Mr. Rapstine on several occasions. Specifically,

<u>Ms. Nabhan repeatedly raised her hand while GGS's counsel was still posing her questions, as an improper cue to Mr. Rapstine that an objection would be forthcoming and to await Ms. Nabhan's direction</u>. Additionally, Ms. Nabhan made several attempts to coach the witness verbally, including the following:

- "I am going to instruct the witness not to speculate."   [Rapstine Dep., p. 16, lines 1-2; p. 2, lines 8-9.]

- "If you can." [Rapstine Dep., p. 25, line 4.]

- "To the extent you remember" [Rapstine Dep., p. 38, lines 20-21]

- "If you can remember. It was a long time ago." [Rapstine Dep., p. 43, line 25 through p. 44, line 1.]

Such commentary, of course, represents improper coaching. *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 583-84 (D. Md. 2010) (reprimanding counsel for improper speaking objection where counsel stated "I object. This happened too long ago. You are asking her to speculate as to what happened almost two years ago.").

Such improper conduct forced Movants' counsel to abort the deposition.  Because of the extent of this egregious conduct and counsel's apparent determination to continue it in future depositions, Movants, respectfully request specific guidance from the Court on appropriate deposition conduct as well as the appointment of a Master or Magistrate Judge to oversee future depositions. Courts have repeatedly recognized that deposition conduct far <u>less egregious</u> than that displayed by Ms. Nabhan violates Rule 30 and warrants specific guidance from the Court. *See, e.g. Mezu,* 269 F.R.D. at 583-84 (concluding that counsel's behavior was improper were she objected only **50 times** and made suggestive speaking objections in an effort to aid the deponent.); *State Farm v. Dowdy*, 445 F. Supp. 2d 1289, 1291 (N.D. OK 2006) (court gave specific guidance on deposition conduct and recommended taking deposition at the federal

courthouse where counsel improperly **commented on answers 33 times during a four and one-half hour deposition**, and directed the deponent **not to answer a question three times**); *Birdine v. City of Coatesville*, 225 F.R.D. 157, 159 (E.D. Pa. 2004) (entering order specifically instructing defense counsel about proper deposition conduct); *Wilson v. Martin County Hosp. Dist*. 149 F.R.D. 553, SSS (W.D. Tex. 1993) (providing parties guidance where counsel wrongfully asserted confidentiality of personnel file and instructed deponent not to answer questions based on the same).

**B.    The Court Should Require Mr. Rapstine to Respond to the Questions Posed at a Continued Deposition**

1.    Counsel's Repeated Instructions Not to Answer Constituted Improper Attempts to Disrupt Mr. Rapstine's Deposition

In addition to making numerous unnecessary objections involving substantial colloquy, counsel for the Secretary also instructed Mr. Rapstine not to respond to inquires **on eighteen (18) occasions.**" As a general rule, instructions not to answer questions at a deposition are improper." *Hisaw v. Unisys Corp.*, 134 F.R.D. 151, 153 (W.D. La. 1991). Rule 30(c)(2) provides that an objection at the time of the examination must be made on the record, "but the examination still proceeds; the testimony is taken subject to any objection." Courts have emphasized that any instruction to not answer a question during a deposition that does not fall squarely within an express Rule is presumptively invalid. *Boyd v. Univ. of Maryland Medical Sys.*, 173 F.R.D. 143, 147 (D. Md. 1997).[6] *See also* Fed. R. Civ. P. 30(c)(2) (providing that counsel may instruct a

---

[6] In order to determine if a deponent was properly instructed not to answer a question, the court considers the following: (1) the importance of the relevant information sought; (2) the number of times the attorney instructed the witness not to answer; (3) whether the question which prompted the instruction was proper and unobjectionable; (4) whether the instruction not to answer was made in a sincere although misguided, effort to preserve a colorably valid objection, or instead, for purposes of disrupting the deposition; and (5) whether the attorney instructing the deponent not to answer had advance notice that the deposing attorney would initiate questions in an area considered objectionable. *Boyd*., 173 F.R.D. at 147. Movants respectfully submit that all of these factors demonstrate that Ms. Nabhan's instructions not to answer were improper, as the information sought was highly relevant to GGS, the

witness not to answer solely "when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under rule 30(d)(3).") Moreover,  when instructions are not proper, the Court is empowered to impose the appropriate sanctions as set forth in Rule 30(d)(2).

As the deposition transcript makes evident, Ms. Nabhan's indiscriminate instructions not to answer prevented Movants from obtaining answers to highly relevant, non-privileged information. While many of the foregoing instructions were purportedly based on the "government informant's privilege," as explained fully below, those assertions were improper because they predicated unreasonably expansive, if not willfully manipulated, interpretation of the privilege.

Significantly, however, Ms. Nabhan also instructed the witness not to answer for reasons **completely disconnected from any recognized privilege**, improperly construed or otherwise. On at least three (3) separate occasions, Ms. Nabhan instructed the witness not to answer simply because a question was supposedly "argumentative and harassing," "asked and answered," or simply "assumed facts not in evidence." [*See* Rapstine Dep., p. 62, Lines 20-22; p. 63, lines 18-20; and p. 64, Lines 24-25.]  For example, counsel for the Secretary admonished Mr. Rapstine not to answer the following question on the bases of harassment, ambiguity, or because the question had been asked and answered:

- If, in writing a $6 million check for the amount presented to him as backwages due in October 2010, Mr. Steindorf would have essentially overpaid the amount he purportedly owed the Department of Labor since the Secretary's March 2011 backwages due amount has reduced by $4 million. [Rapstine Dep., p. 62, Lines 20-22.]

---

instruction not to answer was an insincere attempt to disrupt the deposition, and she should been well aware that counsel for GGS would ask questions regarding this basic information.

- Whether Mr. Rapstine would have submitted a check written by Mr. Steindorf in the amount of $6 million in October 2010 to an appropriate person at the Department of Labor. [Rapstine Dep., p. 63, lines 18-20.]

- Whether, in October 2010,  Mr. Rapstine would have refused a check for $ 6 million from Mr. Steindorf. [ Rapstine Dep., p. 64, Lines 24-25.]

Ms. Nabhan's objections to these questions, of course, represent a significant departure from any proper or recognized basis for an instruction not to answer. Further, these errant objections show Ms. Nabhan's bad faith intent to delay the deposition and prevent counsel for Movants from taking any meaningful discovery. *See* Fed. R. Civ. P. 30(c)(2).

Finally, the Secretary's counsel has not properly preserved Mr. Rapstine's purported entitlement not to answer because she has not filed a motion for protective order pursuant to Rule 30(d) or Rule 26(c) in this Court. Rather, counsel unilaterally directed the witness not to answer and left it to Movants, to bring the matter before the Court in the form of the instant motion to compel. [*See* Rapstine Dep., p. 26, line 19 through p. 27, line 2: "Our position is that . . . and you can take that to the Judge . . .is [that the informant's privilege] would  . . .divulge protected information and I'm instructing the witness, again, not to answer."]   Yet, it is plainly "the duty of the attorney instructing the witness not to answer to immediately seek a protective order." *Hisaw*, 134 F.R.D. at 153 (emphasis added).

In sum, counsel for the Secretary's repeated invalid instructions not to answer effectively prevented Movants from obtaining the meaningful, highly relevant discovery to which they were entitled. As such, Movants respectfully request that the Court require Mr. Rapstine to reappear for deposition and to answer the specific questions listed on pages 12 and 13 above.

> 2.   <u>The Secretary Improperly Asserted the Government Informant's Privilege</u>

The government informant's privilege "is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to

officers charged with enforcement of that law." *Roviaro v. U. S.*, 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The privilege's purpose is to preserve the anonymity of citizens who provide information and encourage citizens to perform their obligation of communicating to law enforcement their knowledge of the commission of crimes, and to "'make retaliation impossible.'" *Brock v. On Shore Quality Control Specialists, Inc.*, 811 F.2d 282, 284 (5th Cir.1987) (quoting *Continental Fin. & Loan Co. of West End*, 326 F.2d 561, 564 (5th Cir.1964)). The information the Secretary insists is exempt from disclosure neither falls within the limited scope of the informant's privilege nor serves the policy reasons behind the privilege. Moreover, the Secretary's attempts to shield such basic information from disclosure fundamentally prejudice Movant's abilities to pursue their claims and defenses. Accordingly, the Secretary's insistence that this Court condone such a wholesale assertion of the purported privilege must be rejected.

a.    <u>The Secretary Has Not Properly Invoked the Privilege</u>

The informant's privilege "is not to be lightly invoked."  *Chao v. Westside Drywall, Inc*. 254 F.R.D. 651, 657-58 (D. Ore. 2009); *see also U.S. v. Reynolds*, 345 U.S. 1, 7 (1953); *Mitchell v. Bass*, 252 F.2d 513, 516 (8th Cir. 1958). It must be raised by a formal claim of privilege lodged by the head of the department that has control over the matter, after actual personal consideration by that officer. *Id.* While the "agency head" may delegate authority to claim the privilege, she may do so only to a subordinate of high authority, and the delegation must be accompanied by specific guidelines on the use of the privilege. *Martin v. Albany Business Journal, Inc.* 780 F. Supp. 927, 931 (N.D. N.Y 1992). Courts have repeatedly reaffirmed that all government privileges, regardless of type, must satisfy certain formal requirements to be properly invoked. *U. S. v. O'Neill*, 619 F.2d 222, 225-26 (3d Cir.1980) (analyzing assertion of executive privilege); *Albany Business Journal,* 780 F. Supp. at 932 ("[T]he informant's privilege,

- 14 -

being a governmental privilege, is subject to the aforementioned strict requirements for formal invocation.").

Thus, as a preliminary matter, the Secretary's attempted use of the informant's privilege must be rejected because the Secretary has failed to formally invoke the privilege. *Westside Drywall, Inc.*, 254 F.R.D. at 657-58 (D. Ore. 2009) (finding the Secretary of Labor had not properly invoked the informant's privilege where she had failed lodge the requisite formal claim of privilege). As in *Westside Drywall*, the Secretary here has filed "no written assertion of the informant's privilege, submitted no written delegation to a high-ranking subordinate of the responsibility for asserting the privilege, and provided no affidavit or declaration that she or anyone on her behalf conducted a careful review of the documents at issue to determine whether the informant's privilege applies to some or all of the documents that Defendants seek." *Id.* (rejecting application of the informant's privilege). Moreover, there is no evidence that, in the alternative, the Secretary made a proper delegation, accompanied by specific guidelines for the privilege. *See id*.

To the contrary, a recent email from Ms. Nabhan confirms that, as of June 15, 2011, **the Secretary has not properly invoked the privilege and intends not to do so until July 8, 2011**.[7] Indeed, by Ms. Nabhan's own admission, the Acting Administrator "has not had the opportunity to review" the purportedly privileged document as required. Moreover, counsel's indiscriminate invocation of the informant's privilege **18 times in a mere hour-and-a-half long deposition** further underscores that **no** guidelines regarding use of the informant's privilege were ever promulgated. Finally, even if there has been a proper delegation (and Ms. Nabhan's recent email makes clear that there has not been), counsel has still failed to lodge a formal claim of privilege with the Court, as required. *Westside Drywall, Inc.*, 254 F.R.D. at 657-58. In sum, the

---

[7] The June 15, 2011 email from Colleen Nabhan to Annette Idalski is attached hereto as Exhibit D.

Secretary has made no attempt to follow the prescribed process for invoking the government informant's privilege and, for that reason alone, counsel for the Secretary cannot invoke the informant's privilege.

        b.   <u>The Privilege Does Not Apply to the Information and Documents Sought</u>

        (1)   <u>The Information Movants Seek Falls Outside the Scope of the Privilege</u>

It is well-established that the government informant's privilege is limited. *Rovario v. U.S.,* 353 U.S. 53, 59 (1957)). Specifically, the privilege is concerned **only with the identity of the informer**. *State of Washington, Dep't of Social and Health Serv's*, 2010 WL 519729, at *1 (quoting *Rovario*, 353 U.S. at 59 (1957)). ("The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged."); *see also Westside Drywall, Inc.*, 254 F.R.D. at 656 ("if disclosure of the contents of a communication will not reveal the **identity of an informer, then the privilege does not preclude disclosure of the communication**.") (emphasis added). Moreover, in the FLSA context, the "informant's privilege" may only be used to conceal names of the informants "'who <u>precipitated the suit by filing complaints</u> with the Department of Labor.'" *State of Washington, Dep't of Social and Health Serv's*, No. 08-5362RJB, 2004 WL 8131095, at *2 (W.D. Wash. May 27, 2008) (quoting *Does v. Advanced Textile Corp.*, 214 F.3d 1058, 1072-73 (9th Cir. 2000)) (emphasis added).

Notwithstanding this established limitation on the privilege, Ms. Nabhan instructed Mr. Rapstine not to answer mundane questions having virtually no bearing on the identity of government informants **fourteen (14) times** throughout the deposition. And in most of those instances, counsel made no attempt to connect the asserted privilege to the information sought beyond the bare assertion that the information sought would "tend to identify government

informants."  For example, counsel for the Secretary insisted that Mr. Rapstine was entitled to avoid answering all questions relating to the following expansive topics:

- The number of gate attendants to whom Mr. Rapstine  spoke during his investigation of GGS. [*Id.,* p. 25.]

- The number of service technicians to whom Mr. Rapstine spoke during his investigation of GGS. [*Id.,* p. 25.]

- Whether the interview statements obtained during the Wage and Hour investigation were signed. [*Id*. p. 34.]

- The names of the documents contained in Exhibit B to Mr. Rapstine's investigation case file. [*Id.*, p. 35.]

- Whether any requests for interviews were sent during the Wage and Hour investigation. [*Id.*, *p*. 35.]

- Whether Mr. Rapstine took a statement from a GGS manager. [*Id*. p. 65.]

- Documents that Mr. Rapstine prepared on behalf of the Secretary which relate to or refer to the interviews of individuals listed on Exhibit A (i.e. those individuals for whom the Secretary is seeking backwages and injunctive relief). [Rapstine Dep., p. 15-17.]

Because Ms. Nabhan's objections to these questions were inappropriate, Movants submit that they were unfairly denied responses to these basic questions and request that this Court should compel answers to them.

It is inconceivable that the basic information withheld during the deposition – including a general description of the contents of his file, the number of persons from whom statements were obtained, and whether the statements were signed – could not possibly identify the Secretary's informants. The proposition is particularly illogical given that over 400 contractors are at issue in this case. Moreover, the Secretary has not asserted that any of the individuals who were interviewed or provided witness statements actually precipitated the suit. That this information is beyond the informant's privilege is further supported by the fact that Secretary was recently

compelled to produce redacted witness statements in a similar case involving the Secretary's allegations of FLSA overtime provisions.[8]

Movants have not requested the names of the informants or any documents displaying their names. [*See, e.g.,* Rapstine Dep., pp. 16, 35.]  Instead, Movants are simply asking for basic information about the investigative file pertaining to GGS and Mr. Rapstine's investigative methods, generally. [Rapstine Dep., pp. 15-17, 25, 35 & 65.] If such information is subject to the government informant's privilege, it is difficult to conceive what information regarding a Department of Labor investigation is <u>not privileged</u> and, thus, subject to discovery by a party. Accordingly, no matter how vehemently or repeatedly the Secretary insists that the informant's privilege applies to the information and documents the Movants have been precluded from seeking, she cannot show that this information falls within the inherent limits of the privilege.

> (2)     Disclosure is Appropriate Because the Information Sought
>             is Relevant and Helpful to the Defense

Even if the information Movants seek did fall within the ambit of the informant's privilege, "where the disclosure of an informer's identity, or the contents of his communication . . . are essential to a fair determination of a cause, the privilege must give way." *See Washington Dep't of Corrections,* 2009  WL 8131095, at *2 (quoting *Rovario*, 353 U.S. at 60-61); *see also Wirtz v Rosenthal*, 388 F.2d 290, 291 (9th Cir. 1967). To determine whether disclosure is appropriate, the Court should weigh: (1) whether the testimony would be "relevant and helpful" to the defendant's case, especially in terms of the relationship between the asserted defenses and

---

[8] The interview statements produced in *Solis v. State of Washington Dep't of Corrections* are attached hereto as Exhibit E. In that case, the Secretary was compelled to produce witness statements and related documents responsive to the defendant's requests to produce "all documents . . .presented to or signed by any current or former DOC Employee," "all journals calendars, day planners schedules, telephone or cell phone records, bank records, receipts and any other documents that discuss DOC employee activities or reflect how DOC Employees spent their time on any day from June 2005 to present . . . ," and "all documents that refer or relate to the employment of DOC Employees." The Interrogatories and Requests for Production at issue in that case are attached hereto as Exhibit F.

the likely testimony of the informant; and (2) the government's interest in protecting the informant. *U.S. v. Sai Keung Wong*, 886 F.2d 252, 255-56 (9th Cir. 1989).

Here, the requested information regarding the names of the basic contents of Mr. Rapstine's file, the number of statements taken, the number of persons interviewed, and the investigatory process generally are unquestionably "relevant and helpful" and "essential" to Movants' defenses. Indeed, this information forms the crux of the Secretary's claims and, without the information, it would be virtually impossible for the Movants to defend themselves. Allowing the Secretary to invoke the informant's privilege in such a sweeping manner leaves Movants unable ascertain the most basic information regarding how the GGS investigation was conducted, what bases the Secretary considered in reaching her conclusion that GGS had allegedly violated the FLSA, and what information might contradict or amplify the testimony of the Secretary's witnesses. Indeed, the crucial relevance of these fundamental investigation documents is highlighted by the fact that the Secretary of Labor has routinely produced these documents in other FLSA cases. [*See* Exhibit E.]

The Secretary's adamant assertion of the privilege is particularly perplexing given that she is well aware that such essential information may not be shielded by the informant's privilege. Indeed, the very attorney defending Mr. Rapstine's deposition, Ms. Colleen Nabhan, also served as counsel of record for the Department of Labor in *Chao v. Texas Dept. of Criminal Justice*, No. 4:00-cv-02098 (S.D. Tex. 2002). In that case, counsel for the Secretary, likewise, attempted to use the informant's privilege to conceal the same fundamental information underlying the Secretary's FLSA claims that are at issue here. Specifically, during depositions of defendant's representatives, counsel for Secretary asserted that the deponents could not answer questions regarding "whether they were interviewed by, participated in a survey conducted by, or

communication with agents of the [] Department of Labor" based on the government informant's privilege.[9] After holding a conference with the Court regarding the parties' discovery dispute, The Honorable Francis Stacy entered a minute order specifically admonishing the Secretary and her counsel that "[a]ny information which Plaintiff claims is privileged, but which Plaintiff intends to use for any evidentiary purpose, including at trial, in this case **must be disclosed to Defendant in response to a proper request for same by Defendant, at either a deposition or in written discovery**." [*See* Ex. G, attached hereto.]  Just as in that case, it is apparent that the Secretary has "an intent to use information gained through interviews, surveys and conversations" with GGS's contractors and employees as "evidence in this case."  For example, Mr. Rapstine testified that he used informants to calculate backwages  [Rapstine Dep., p. 24, lines 7-8], and in Response to GGS's First Interrogatory No. 14, the Secretary has specifically admitted that she relied on interviews with "gate guards" and "service technicians" to make her purported backwage calculations.[10]

Additionally, Movants need the information to attack the propriety and sufficiency of the Secretary's investigation. The number of gate attendants that Mr. Rapstine interviewed, in particular (*see* Exhibit B), is highly relevant to the sufficiency of his representative sample. An insufficient representative sample, therefore, could lead to skewed and unreliable information regarding GGS gate attendants working conditions and hours, as a whole. Movants cannot take discovery of or prove this essential fact if the Secretary's counsel continues to insist on invoking the informant's privilege in the unrestrained manner asserted in Mr. Rapstine's deposition.

---

[9] The Court's June 6, 2002  Minute Order [Dkt. # 53.] in the *Chao v. Texas Dept. of Criminal Justice* matter is attached hereto as Exhibit G.

[10] A relevant excerpt of the  Secretary's Objections and Responses to GGS's First Interrogatories are attached hereto as Exhibit. H.

By contrast, the government's interest in protecting the potential informants is relatively minimal. If names and contact information are redacted from the witness statements or file contents, any remaining factual information presents only a miniscule need for confidentiality or protection. *See State of Washington Dept. of Corrections*, 2004 WL 813 1095, at *2; Exhibit E, attached hereto.

Accordingly, even if the information sought is privileged, Movants' essential need for that information clearly outweighs the minimal protection that may arise to the Secretary's informants. Thus, the Secretary's claim of privilege as to the requested information must give way. *Rovario*, 353 U.S. at 60-61.

c.   <u>The Secretary Has Waived the Privilege</u>

Even if the number of employees with whom the Secretary's investigators spoke could possibly be construed as "tending to reveal the identity," of the informants, that "identity-revealing" information <u>has been disclosed</u> to GGS thus, waiving the purported informant's privilege. *Westside Drywall*, 254 F.R.D. at 656 ("the privilege does not apply to bar disclosure of the identity of an informer if the identity is already known <u>or has been disclosed to</u> those who might have cause to retaliate against the informer.") (emphasis added); *Mitchell v. Bass*, 252 F.2d 513, 516-17 (8th Cir. 1958) (government informant's privilege does not apply where information regarding the identities of the claimants, if also informants, has been disclosed to the defendant); *Halpern v. U.S.* 258 F.2d 36 (2d Cir. 1958). Such a waiver is permitted because if the purported identity-related information has already been disclosed, the rationale for concealing that identity-related information (i.e. "retaliat[ion] against the informer") disappears. *Westside Drywall*, 254 F.R.D. at 656.

In her document production, the Secretary produced an email revealing highly relevant information regarding the number of gate attendants (17), service technicians (12), and sales

people (4) whom Mr. Rapstine interviewed during his investigation. [Rapstine Dep., pp. 28-29; Exhibit B.]    The Secretary adamantly maintains that this information must be destroyed and disregarded because it is privileged.  [*Id.*] Movants maintain, however, that they need not do so because such information is outside the limited scope of the government informant's privilege. Further, given the waiver principles discussed above, Movants maintain that the Secretary has effectively waived any privilege by  disclosure of the information to Movants in the first instance. Movants  are now aware of the number of gate attendants, service technicians, and sales people that Rapstine interviewed because of the Secretary's disclosure in its document production. Any rationale for protecting that information no longer exists.

### C.    Movants are Entitled to Sanctions and Other Relief Against the Secretary's Counsel

Per Rule 30(d)(2), this Court has the discretion to impose an appropriate sanction — including the reasonable expenses and attorney's fees incurred by any party — on a person who impedes, delays, or frustrates the fair examination of the deponent. As the deposition transcript and DVD demonstrate, Ms. Nabhan continually interposed speaking objections in an effort to suggest answers to Mr. Rapstine or create such confusion that he was unable to answer. [*see e.g.,* Rapstine Dep., p. 10, line 11 through p. 12, line 22.] Moreover, Ms. Nabhan violated Rule 30 on multiple occasions by improperly instructing Mr. Rapstine not to answer questions based on a deliberately expansive interpretation of the government informant's privilege [*See, e.g.,  id.,* p. 34, line 4 through p. 35, line 7] or, in some instances, for reasons completely unrelated to any sort of privilege. [*See, e.g., id.,* p. 62, lines 20-22.] Ms. Nabhan's conduct was so egregious that it forced Movant's counsel to terminate the deposition since Ms. Nabhan was proceeding in a manner of bad faith that "impede[d and] ... frustrate[d] the fair examination of " Mr. Rapstine. Fed. R. Civ. P. 30(d)(2).

Such conduct clearly warrants an award of sanctions against Ms. Nabhan pursuant to Rule 30(d)(2).. *Rangel v. Gonzalez Mascorro*, Civ. Action No. L–10–104, 2011 WL 1570329, at * 8 (S.D. Tex. April 25, 2011) (counsel's conduct in advising plaintiff not to answer deposition questions warranted award of attorney fees and costs to defendants as sanctions for impeding, delaying, or frustrating the fair examination of plaintiffs). As part of this sanction, Movants seek an award of attorneys' fees and travel-related expenses related to the aborted deposition of Mr. Rapstine. Significantly, Mr. Rapstine's deposition, which had been noticed since early April along with the depositions of the four other DOL witnesses to take place on June 8-10, required counsel for GGS and Mr. Smith to make extended travel plans from Atlanta, Georgia. *See F.D.I.C. v. Fidelity & Deposit Co. of Md.*, No. Civ.97-1068TW, 2000 WL 1175626, at *4 (S.D. Cal. Aug. 2, 2000) (awarding Rule 37(a)(4) sanctions due to counsel's improper deposition conduct "in an amount sufficient to compensate defense counsel for the time lost, including, the cost for counsel to fly to San Diego for the deposition, and the expense of rescheduling all of the other depositions which were dependent upon this deposition being completed.").

Movants are also entitled to attorneys' fees incurred in the preparation and filing of this Motion, which was directly precipitated by Ms. Nabhan's improper conduct. *See also* Fed. R. Civ. P. 37(a)(5)(A); *State Farm Mut. Auto. Ins. Co. v. Dowdy ex rel. Dowdy*, 445 F.Supp.2d 1289 (N.D. Okla. 1994) (awarding attorney's fees and expenses where defense counsel's improper deposition conduct necessitated the filing of the Motion Directing Defendants' Counsel To Cease Obstructionist Tactics during deposition).[11]  In short, given that Ms. Nabhan's behavior impeded, delayed and frustrated the fair examination of Mr. Rapstine, she should be sanctioned to the full extent permitted under law.

---

[11] As required by Rule 37, these fees shall be issued upon the presentation of evidence concerning such attorneys' fees and expenses to this Court.

In addition to these sanctions, Movants seeks the following relief in the cumulative or in the alternative. First, Movants seek to compel answers to the original deposition questions to which Mr. Rapstine was inappropriately instructed not to respond.  *See* Rule 37(a)(3)(B)(i) (provides that a party may move the Court to compel an answer if "a deponent fails to answer a question asked under Rule 30 or 31."). As Federal Rule 37 prescribes, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed.R.Civ.P. 37(a)(4). These specific questions to which Movants seek answers are listed on pages 12-13 and 17 above.

Second, subject to the Court's discretion, Movants seek specific directions regarding the conduct of future depositions, including:

- The provision that each and every question presented by Movants' counsel will be understood as objected to by counsel for the Secretary, thus preserving her objections to each question and precluding the need for her to continually interject her colloquies and disrupt the deposition;

- That provision that no objections need to be spoken beyond simple a "objection to form;"

- The provision that counsel will be prohibited from asserting any non-verbal cues or coaching to the witness, including but not limited to hand-raising;

- The provision that the time allotted for the conduct of each deposition should utilized for a question and answer exchange, as opposed to the interjection of objections, instructions, "coaching", and other forms of colloquy; and

- The provision that Mr. Rapstine's aborted deposition shall be started anew, with counsel entitled to the benefit of seven (7) full hours of deposition time.

Finally, counsel for Movants request that Magistrate Judge or a Master be appointed by this Court to preside over the conduct of future depositions, thereby providing guidance and instruction to counsel as regards the interjection of objections, argument, "coaching", and other forms of colloquy, as well as to determine the propriety of counsel for the Secretary's inevitably

frequent instructions to decline a response. Although Movant believes that the cost for the appointment of a Master, if ultimately deemed required by the Court, should be borne by the Secretary, Movants shall agree to bear that expense equally with the Secretary.

## IV. CONCLUSION

For all of the foregoing reasons, Movants respectfully request that their Motion to Compel Answers to Deposition Questions and the Imposition of Sanctions and Request for Guidelines on Deposition Conduct and for Magistrate Supervision of Depositions be GRANTED and that this Court enter an Order compelling responses to all improperly withheld answers to deposition questions cited herein, providing guidance for the conduct of future depositions, appointing a Magistrate Judge or Master to supervise future depositions, for an award of sanctions against the Secretary's counsel, and for any other relief the Court deems appropriate and just.

Respectfully submitted this 17th day of June, 2011.


**CHAMBERLAIN HRDLICKA**
**WHITE WILLIAMS & MARTIN**

By: */s/ Annette A. Idalski*
       Kelly E. Campanella
       Federal I.D. No. 1136062
       Annette A. Idalski
       Texas Bar No. 00793235
       Federal I.D. No. 1130754
       191 Peachtree Street, N.E.
       Thirty-Fourth Floor
       Atlanta, GA  30303-1747
       Telephone:  (404) 588-3570
       Facsimile:   (404) 588-3571


*Attorneys for Gate Guard Services, L.P.,*
*Bert Steindorf & Sidney L. Smith*

## **RULE 7.1(D) CERTIFICATE OF CONFERENCE**

As required by Local Rule 7.1(D), Movants Gate Guard Services, L.P., Bert Steindorf, and Sidney Smith hereby aver that they have attempted to confer with Defendant Hilda L. Solis, Secretary of Labor about the issues raised herein at both the June 7, 2011 deposition of David Rapstine and at the June 7, 2011 telephone conference with the Court. However, the parties have been unable to agree regarding the disposition of the issues in the instant MOTION TO COMPEL ANSWERS TO DEPOSITION QUESTIONS AND THE IMPOSITION OF SANCTIONS AND REQUEST FOR GUIDELINES ON DEPOSITION CONDUCT AND FOR MAGISTRATE SUPERVISION OF DEPOSITIONS.

## CERTIFICATE OF SERVICE

This is to certify that on this date I have electronically filed the foregoing MOTION TO COMPEL ANSWERS TO DEPOSITION QUESTIONS AND THE IMPOSITION OF SANCTIONS AND REQUEST FOR GUIDELINES ON DEPOSITION CONDUCT AND FOR MAGISTRATE SUPERVISION OF DEPOSITIONS with the Clerk of Court via the CM/ECF system and have served a copy of the same via the CM/ECF system on:

UNITED STATES DEPARTMENT OF LABOR
Colleen B. Nabhan
525 Griffin Street, Suite 501
Dallas, Texas 75202
nabhan.colleen@dol.gov

OFFICE OF UNITED STATES ATTORNEY
John A. Smith, III
800 N Shoreline Blvd, Suite 500
Corpus Christi, Texas 78401
john.smith@usdoj.gov

This 17th day of June, 2011.

**CHAMBERLAIN HRDLICKA
WHITE WILLIAMS & MARTIN**

By:   */s/ Annette A. Idalski*
Annette A. Idalski
Texas Bar No. 00793235

364937.3